## MILLER ET AL. *v.* McCLAIN.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 19. Submitted November 13, 1918.—Decided March 31, 1919.

An Indian holding a trust patent under the General Allotment Act of 1887, who leases his allotment with permission granted under the Act of June 25, 1910, and the supplementary regulations of the Interior Department, may make a valid sale of his share of the crop reserved in the lease as rental. P. 311.

Whether, apart from authority to lease, sale of the growing crop by the allottee would be void under the Act of 1887, in a State where such crops are personalty—not passed upon. P. 309.

The concession that the allottee had written permission from the Government to lease his allotment is taken as implying permission to lease for himself, based on a finding of capacity under the Act of 1910 and regulations, and not as referring to authority of the Government to lease for the allottee in case of age, disability, etc., under the Act of May 31, 1900, 31 Stat. 221, 229. P. 312.

95 Kansas, 794, affirmed.

THE case is stated in the opinion.

Mr. A. E. Crane and Mr. E. D. Woodburn for plaintiffs in error.

Mr. Robert Stone, Mr. Geo. T. McDermott and Mr. H. O. Caster for defendant in error. Mr. M. A. Bender and Mr. Floyd W. Hobbs were on the brief.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Under the Act of February 8, 1887, c. 119, 24 Stat. 388, 389, Mish-no, a member of the Prairie Band of the Pottawatomies, was allotted land in Kansas, which was to be

held in trust by the United States and subject to the re-
strictions on the power of the allottee to deal with the
land, provided by that act.

Mish-no leased the land for the year 1912 for a rental
of one-half the corn and stalks to be produced. In May
of that year he sold his right to his share of the prospective
crop to McClain, and in the autumn when the crop was
made again sold his share to Cooney, who sold and de-
livered it to Miller.

The writ of error before us is prosecuted by Miller and
Cooney to reverse the judgment of the court below, sus-
taining the purchase by McClain, with a resulting liability
in Miller and Cooney to McClain for the corn or its value.
The case as made by the argument turns exclusively upon
the correctness of the interpretation affixed by the court
below to § 5 of the Act of 1887, to the effect that as by the
law of Kansas a growing crop is a chattel, the sale to Mc-
Clain was valid and not in conflict with the following pro-
vision of § 5:

"And if any conveyance shall be made of the lands set
apart and allotted as herein provided, or any contract
made touching the same, before the expiration of the
time above mentioned [the trust period], such convey-
ance or contract shall be absolutely null and void."

But we are of opinion that the solution of the case does
not require a consideration of this question since it only
exacts that we ascertain whether the particular contract
in question was by law excepted from the operation of the
prohibition of the Act of 1887, thus rendering an analysis
and application of that prohibition negligible.

As we have seen, what was sold to McClain was not an
undivided share of a growing crop of the allottee but was
that portion of the total crop of the tenant fixed by the
lease as due for rent. The lease, therefore, and the power
to make it was the criterion by which to determine the
application of the prohibition of the Act of 1887. If it

be that the lease was inconsistent with that act it would follow that the stipulation as to the rent which it contained would perish with the contract. If on the contrary it be that the lease was valid, the authority to make it would include the right to stipulate for the rental. As it cannot be questioned that a contract leasing land is one touching the land, it is indisputable that the lease was void under the Act of 1887 unless its validity may be excepted by some other statutory provision.

By a course of legislation beginning in 1891 and extending to 1900, authority was conferred upon the Secretary of the Interior to sanction, when enumerated and exceptional conditions existed, leases of land allotted under the Act of 1887, and the power was given to the Secretary to adopt rules and regulations governing the exercise of the right (Acts of February 28, 1891, c. 383, 26 Stat. 794, 795; August 15, 1894, c. 290, 28 Stat. 286, 305; June 7, 1897, c. 3, 30 Stat. 62, 85; May 31, 1900, c. 598, 31 Stat. 221, 229). The general scope of the legislation is shown by the following provision of the Act of 1900, which does not materially differ from the prior acts. "That whenever it shall be made to appear to the Secretary of the Interior that, by reason of age, disability, or inability, any allottee of Indian lands can not personally, and with benefit to himself, occupy or improve his allotment or any part thereof, the same may be leased upon such terms, regulations, and conditions as shall be prescribed by the Secretary for a term not exceeding five years, for farming purposes only."

The regulations for the purpose of carrying out the power given prescribed a general form of lease to be used under the exceptional circumstances which the statute contemplated and subjected its execution and the subjects connected with it to the scrutiny of the Indian Bureau and to the express or implied approval of the Secretary. (See "Amended rules and regulations to be

observed in the execution of leases of Indian Allotments,"
approved by the Secretary of the Interior March 16,
1905.)

The foregoing provisions were enlarged by the Act of
June 25, 1910, c. 431, 36 Stat. 855, 856, as follows:

"That any Indian allotment held under a trust patent
may be leased by the allottee for a period not to exceed five
years, subject to and in conformity with such rules and
regulations as the Secretary of the Interior may pre-
scribe, and the proceeds of any such lease shall be paid to
the allottee or his heirs, or expended for his or their bene-
fit, in the discretion of the Secretary of the Interior."

And the regulations of the Secretary which were adopted
under this grant of power in express terms modified the
previous regulations on the subject "so far as to permit
Indian allottees of land held under a trust patent, or the
heirs of such allottees who may be deemed by the super-
intendent in charge or any competency commission to
have the requisite knowledge, experience, and business
capacity to negotiate lease contracts, to make their own
contracts for leasing their lands." The scope of such regu-
lations is further made clear by the following provision
dealing with the rental to result from the lease by the
Indian of his allotted land under the power given: "The
question of consideration, whether a cash rental or share
of the crops grown on the land, shall be left to the de-
termination, of the lessor." (Regulations, approved
September 19, 1910.)

The right of an allottee under stated conditions to lease
and to stipulate for such rental as he deemed adequate,
whether in money or crop, having been thus undoubtedly
provided for by the statute and the regulations, the only
question is, had the capacity of the allottee in this case
been recognized conformably to the statute and regulations
so as to justify his exercise of the right? That question
would seem to be free from difficulty for the following

reasons: (a) because in the narrative statement of the testimony on behalf of the plaintiff it is said that "Written permission had been given by the Government to Mish-no to lease his own allotment and [he] had leased the same for the year 1912;" (b) because there is no denial or controversy as to the correctness of this statement; (c) because the court below in its opinion treated the matter as indisputable by stating, "Written permission was given him [Mish-no] by the Government to lease his allotment;" and (d) because the fact thus stated clearly refers to the authority and capacity provided for by the Act of 1910 and the regulations thereunder, that is, not to the authority of the Government to lease for the allottee, but to the right to give the allottee permission to lease his allotted land for himself as the result of a conclusion that he had capacity to do so.

As it results that Mish-no, the allottee, had by virtue of the statute of 1910 and resulting regulations the power to make the lease and to stipulate for the rental for which it provided, it follows, as the greater power includes the lesser, that the contract for the sale of the growing crop made with McClain was also within the statute and regulations and excluded from the prohibition of the Act of 1887.

For the reasons which we have stated we affirm the judgment of the court below which sustained a like conclusion, although we have not found it necessary to express any opinion as to the correctness of the reasoning by which the court below was controlled in its action.

*Judgment affirmed.*